IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HOME INSTEAD, INC., a Nebraska corporation, | ) ) ) | |
| | ) | 8:05CV237 |
| Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM AND ORDER |
| WILLIAM P. VELEZ, an individual, and BILLYNNE PROPERTIES, INC., a corporation, | ) ) ) ) | |
| Defendants. | ) ) | |

Before the court is plaintiff's motion for preliminary injunction, Filing No. 5, defendants' motion to dismiss, Filing No. 12, and motion to extend time to submit affidavits, Filing No. 24.[1]  The plaintiff initially filed this lawsuit in state court.  Upon filing an amended complaint, Filing No. 1, Ex. B, the plaintiff alleged federal law violations under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and right before the state court hearing for a temporary restraining order, the defendants petitioned to remove the case to federal court pursuant to 28 U.S.C. § 1441(b).  On May 9, 2005, defendants filed suit against Home Instead in state court in New Jersey and on May 26, 2005, Home Instead removed the case to the United States District Court for the District of New Jersey.  Plaintiff thereafter asked this court to issue a preliminary injunction. Filing No. 5.  Defendants then filed bankruptcy. Filing No. 11.  Subsequently, this court referred the case to the United States

---

[1]Defendants' counsel filed the motion to extend time, Filing No. 24, on behalf of defendants William P. Velez and Lynne A. Velez on July 11, 2005.  Thereafter, the magistrate judge permitted counsel to withdraw his representation of these two defendants.  Filing No. 44.  Defendant William P. Velez then filed his affidavit in this case.  Filing No. 45.  He has not requested permission to file any additional documents either by motion or at the recent hearing conducted by this court on September 13, 2005.  Filing No. 46.  Accordingly, the court will deny this motion as moot.  Further, the amended complaint no longer lists Lynne A. Velez as a defendant.  *See* Filing No. 1, Ex. 1.  Consequently, the court finds that Lynne A. Velez is no longer a defendant in this case.

Bankruptcy Court for the District of Nebraska. Filing No. 17. The bankruptcy court recommended that this court retain jurisdiction of the case and allow the litigation to proceed. Filing No. 21. The court adopted the report and recommendation in its entirety. Filing No. 31.

Defendants filed a motion to dismiss this case, having previously filed the state court action pursuant to Nev. Rev. Stat. § 25-414, arguing that, under the doctrine of forum non conveniens, this court lacks personal jurisdiction and that the trial forum should be in New Jersey where the business and witnesses are located.[2] Filing No. 12. The motion to dismiss is supported by the affidavit of William P. Vilez. Filing No. 13.

**FACTS**

Home Instead is a non-medical companionship and domestic care services business for senior citizens. It is headquartered in Omaha, Nebraska and offers franchises in different parts of the country. Home Instead currently has 493 franchises in North America and approximately 90 franchises in Japan, Portugal, Ireland and Australia. It has been licensed and has received registered trademarks from the U.S. Patent and Trademark Office. Defendant Billynne Properties, Inc. is a New Jersey corporation with its principal place of business in Ewing, New Jersey. Defendant William P. Velez is a citizen of New Jersey and resides in New Jersey. Defendant Billynne Properties, Inc. entered into Franchise Agreement No. 389 with the plaintiff which allowed defendants to operate a Home Instead franchise within a certain geographic area in New Jersey. Filing

---

[2]Defendants filed a state court action in New Jersey long after plaintiff filed its original action in Nebraska state court.

2

No. 1, Ex. A.  Plaintiff contends that defendant William P. Velez personally guaranteed this agreement, and defendant disputes plaintiff's claim.

Under the contract, defendants agreed to certain provisions that plaintiff contends are material and have been violated.  First, defendants agreed to pay timely franchise fees, twice a month, to plaintiff; second, defendants agreed not to solicit business outside of their geographic zones; and third, defendants agreed to do criminal background checks on all employees that would be working with the senior population.  After what plaintiff claims are numerous violations, plaintiff made a decision to terminate the franchise agreement. Plaintiff filed a lawsuit in Nebraska state court asking for a determination that the franchise agreement had been breached. Plaintiff gave notice of termination and defendants asked for additional chances and time to comply with the contract.  Plaintiff then gave defendants time to attempt to sell the franchise and gave defendants a couple of extensions of time to try and sell the business (a total of 180 or more days).  A sale did not occur.

Plaintiff then filed an amended petition in state court and added a count for trademark infringement and requested a temporary injunction.  Thereafter, defendants removed this case to federal court. The motion for preliminary injunction filed by the plaintiff and the motion to dismiss filed by the defendants are now before the court.

**DISCUSSION**

**A.   *Preliminary Injunction***

In considering plaintiff's motion for a preliminary injunction, the court must determine (1) the likelihood of success on the merits; (2) the threat of irreparable harm to the movant absent the relief; (3) the balance between the harm inflicted and the harm absent relief; and (4) the public interest.  *Dataphase Sys. Inc. v. C.L. Sys. Inc.*, 640 F.2d 109, 114 (8th

3

Cir. 1981).    In order to terminate a franchise under New Jersey law, the franchisor must give sixty days advance notice of the termination, and the termination must be for good cause for failure of the franchisee to substantially comply with the requirements of the franchise agreement.  N.J.S.A. 56:10-5 (2001).

First,  plaintiff argues that it will be irreparably harmed if defendants are allowed to continue to use the trade name and trademarks.  There will be market confusion argues the plaintiff and damage to plaintiff's reputation.  Second, plaintiff contends it will be unable to market its services in that area and will lose goodwill and business reputation.  Third, plaintiff argues that it will win on the merits.  And fourth, plaintiff argues that it is in the public interest to grant this injunction.  Otherwise, the public faces potential confusion as defendants are continuing to operate the franchise without authorization.

From the evidence submitted, it appears that defendants clearly breached the agreement with regard to timely payments of franchise fees.  There are numerous letters and memos from plaintiff to defendants and from defendants to plaintiff regarding these late payments.  (Aff. of Banark, Exs. 13-26, Prelim. Inj. Documents; *id.,* Ex. 7, History Notes.)  Also, there are affidavits/exhibits from other franchisees saying that defendants solicited business in their territory.  *(Id.*, Ex. 8 through 12; Ex. B, ex. 2; *id.*, Ex. D, ex. 4.) It appears that at least some of the employees might not have had to undergo criminal background checks as required under the agreement, although the evidence on this issue is not as compelling. (*Id.*, Ex. A, exs. 27, 28.)  In any event, the evidence submitted in support of these claims, and particularly on the claim of unpaid franchise fees, appears to confirm plaintiff's claim that it will win on the merits.

With regard to the other three *Dataphase* factors, the plaintiff's arguments regarding confusion to the public and loss of market share have validity. *See Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 41-44 (2nd Cir. 1986) (potential for public confusion and interest of public requires granting injunction). Home Instead loses its ability to control the use of its name and its reputation if the injunction is not granted. Those factors weigh in plaintiff's favor. When the court balances the harm of granting this injunction with the harm of not granting this injunction, the court concludes that the scales tip in favor of the plaintiff. Accordingly, the court will grant the plaintiff's motion for preliminary injunction.

## B. Motion to Dismiss

### (1) Personal Jurisdiction

Defendants first contend that this court lacks personal jurisdiction over defendant William P. Velez, in his individual capacity, arguing there are not sufficient minimum contacts with the State of Nebraska. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984). Velez argues that all of his contacts with Nebraska occurred as the president of Billynne Properties while pursuing the franchise relationship. This, argues Velez, is insufficient to meet the minimum standards required to exercise jurisdiction over him in his individual capacity.

The burden of establishing a prima facie showing of personal jurisdiction is on the plaintiff. *Centurion Wireless Tech., Inc. v. Hop-On Commun., Inc.*, 342 F. Supp.2d 832, 835 (D. Neb. 2004). This court may exercise personal jurisdiction over defendants in accordance with Nebraska law on one:

5

(1) Who acts directly or by an agent, as to a cause of action arising from the person:
(a) Transacting any business in this state; [or] . . . .
(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Neb. Rev. Stat. § 25-536.  Nebraska's statute extends personal jurisdiction to the limits of the Constitution. *Quality Pork Int'l v. Rupari Food Services, Inc.*, 675 N.W.2d 642 (Neb. 2004).

Plaintiff argues that personal jurisdiction exists in this case, because Velez personally executed a document entitled Guaranty and Assumption of Obligations.[3]  *See* Aff. of Jeffrey J. Huber, Attachment 2, Franchise Agreement No. 389 at 37-38. Plaintiff contends that defendant Velez' contacts with plaintiff began in December 1999, prior to the existence of Billynne Properties, Inc., and such incorporation did not occur until May 8, 2000.  Based on the evidence presented, the court finds Velez made personal phone calls to and negotiated with Home Instead to try and purchase a franchise.  Additionally, Velez signed a personal guaranty in the State of Nebraska for the obligations of Billynne Properties under the agreement.   Velez first argues that he did not sign a personal guarantee and is not named in the agreement personally as a franchisee.  However, Velez also argues that this personal guarantee exists and that he signed it while in Nebraska. The court finds that there is a personal guarantee that has been submitted as evidence in this case.  Velez further admits that he was in Nebraska doing business with Home Instead in February and April 2000, in April 2002, and in April 2003.   Finally, although not

---

[3]Plaintiff first argues that defendants' motion to dismiss is untimely, as Fed. R. Civ. P. 81(c) requires that the motion be filed within five days after removal.  Defendants did not file this motion until June 7, 2005, long after the removal on May 20, 2005. Because the court concludes that personal jurisdiction exists in any event, it need not decide this issue.

dispositive,  Velez agrees that there is a forum selection clause in the franchise agreement

that designates Nebraska as the place for trial if a dispute arises.   Aff. of Jean Kulpa,

Attachment 1, Franchise Agreement No. 389 at 32-33.  Accordingly, the court concludes

that the contacts are sufficient so as to invoke personal jurisdiction over defendant Velez

in this case.

### (2) Motion to Transfer

Defendants next argue that the doctrine of forum non conveniens applies in this

case.   First, defendants argue that the law of the State of New Jersey applies.   Second,

they argue that most of the witnesses are in New Jersey.   Third, defendants contend that

there is already pending a state case and a bankruptcy case in New Jersey.   Fourth, the

franchisee's principal place of business is in New Jersey and, consequently, the choice of

law provision for application of Nebraska law is presumptively invalid under New Jersey

law. *Kubis & Perszyk Assoc., Inc. v. Sun Microsystems*, Inc., 146 N.J. 176, 193, 680 A.2d

618, 626-27 (1996).[4]   And finally, defendants argue that because of Velez' financial

condition, it would cause extreme hardship on the defendants to defend in Nebraska.

Plaintiff contends that the doctrine of forum non conveniens is inapplicable in this case.

See 28 U.S.C. § 1404(a).  The court agrees and will treat defendants' request as a motion

to transfer.   Plaintiff argues that this case should not be transferred to the District of New

Jersey under 28 U.S.C. § 1404(a).  "[A] transfer motion requires the court to consider the

convenience of the parties, the convenience of the witnesses, the interests of justice, and

---

[4]The court notes that, unlike the *Kubis* case, the forum selection clause in the case before this court provides that plaintiff can file an action in any federal court with jurisdiction.  Although I need not decide whether this clause standing on its own is enforceable, the clause is distinguishable from the one in *Kubis.*

any other relevant factors when comparing alternative venues." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997). Five factors are typically considered in weighing convenience with regard to a motion to transfer pursuant to § 1404(a):

> (1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

*Id.* Courts should also look to "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. *Id.*

In this case, obviously it would be easier for each party to litigate in their respective states. Defendants argue that all the documents and witnesses are in New Jersey. However, with regard to witnesses, plaintiff contends that (1) the key termination witnesses are employees in Omaha; (2) one of the witnesses who will testify that defendants stole customers from her is also a resident of Nebraska; and (3) Jean Kulpa, a witness from a neighboring franchisee in New Jersey, has indicated she is willing to testify in Omaha. Filing No. 20, Ex. D. Defendants argue that it will call some customers to testify regarding areas outside of the franchise agreement. The court does not understand the relevancy of this testimony to the issue of whether the franchise agreement has been breached. However, even if relevant, such testimony would probably not be a particularly important piece of the failure to make fee payments, which appears to be the most serious allegation

8

of this lawsuit.  In addition, defendants have failed to establish that they would be unable to obtain that testimony, if needed, by deposition.

Plaintiff also argues, and the court agrees, that most of the documents are located in Nebraska.  *Id.*, Ex. C.  This factor weighs in favor of the plaintiff.  Both sides concede that the complained of conduct occurred in New Jersey and, thus, that factor weighs in favor of defendants.  With regard to what law applies, it would appear that the New Jersey franchise law, federal trademark law, and Nebraska contract and trade laws will potentially apply.  The court further finds that the interests of justice favor the plaintiff. Plaintiff filed this case in Nebraska state court and later filed an amended complaint.   One hour before a temporary injunction hearing, defendants moved the case to federal case.  Thereafter, defendants filed in state court in New Jersey.   Plaintiff moved that case to federal court.  Thereafter, defendants filed bankruptcy.  Defendants notified the court of the bankruptcy immediately before it conducted a preliminary injunction hearing.  The plaintiff's preliminary injunction motion again could not be ruled on. Thereafter, the bankruptcy court recommended that this court proceed with the case.  The plaintiff has made numerous attempts in the last two years to move this case along.   The court finds that the interests of justice require that plaintiff be permitted to continue its case in this forum.   After reviewing the factors and the evidence which favors each side, the court concludes that the motion to transfer will be denied.

THEREFORE, IT IS ORDERED:

1.  Plaintiff's motion for a preliminary injunction, Filing No. 5, is granted;

2.  Defendants shall cease operating Franchise No. 389;

3.  Defendants shall cease using Home Instead's Licensed Marks;

4.   Defendants shall comply with the post-termination covenants set forth in Franchise Agreement No. 389 and specifically § 17 of the Agreement;

5.   Defendants' motion to dismiss, Filing No. 12, is denied; and

6.   Defendants' motion to extend time, Filing No. 24, is denied as moot.

DATED this 12th day of October, 2005.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge